The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GUOLONG LI,<br><br>　　　　　　Defendant. | NO. CR20-171 JCC<br><br>UNITED STATES' SENTENCING MEMORANDUM |

## I.　　INTRODUCTION

Guolong Li was a member of a conspiracy that violated federal and state laws by producing marijuana in Washington and shipping it to other states. Li's role in the conspiracy was to pick up marijuana shipments in the Chicago-area and help to redistribute them. In December 2018, investigators searched Li's residence and found substantial amounts of marijuana and cash. But that did not stop Li. On two later occasions, investigators encountered Li and seized large amounts of marijuana from him. Li has pleaded guilty to *Conspiracy to Manufacture and Distribute Marihuana*, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and the government joins the Probation Office in recommending a term of imprisonment of 30 months followed by three years of supervised release.

//

//

U.S. Sentencing Memorandum - 1
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. FACTS

### A. Background of Investigation

Since 2017, the United States Postal Inspection Service, King County Sheriff's Office, and other law enforcement agencies have investigated a network of illegal marijuana producers and distributors. Members of this network grew marijuana in states on the West Coast, including Washington and Oregon, and shipped the marijuana through legitimate freight companies to states further East, including Illinois, Pennsylvania, and New Jersey.

In the course of the investigation, law enforcement collected shipping records and conducted substantial surveillance. They also searched illegal marijuana grows, stash houses, and marijuana shipments. The investigation led to the charges in this and two related cases, and in October 2020, investigators served search warrants on 35 locations and six vehicles in Washington, Oregon, and New York, resulting in the seizure of more than 13,000 marijuana plants, 500 kilograms of processed marijuana, 20 firearms, and millions of dollars in cash and property.

### B. Guolong Li's Role

Li was not a high-level participant in the conspiracy. He primarily helped to pick up marijuana shipments in the Chicago-area and redistribute them. For example, on June 22, 2018, investigators learned of a suspect shipment from Seattle arriving in the Chicago-area. Dkt. 223 ¶ 8.b. They went to the freight company where the shipment had arrived and a drug-detecting canine indicated the presence of controlled substances associated with the shipment. Later that night, Li and a co-conspirator picked up the shipment at the freight company, and the co-conspirator ultimately drove the shipment to a stash house in Chicago (Chicago Stash House 1). *Id*. Li admits that the shipment contained 43.6 kilograms of marijuana. *Id*.

Again, on July 20, 2018, Li and a co-conspirator picked up another marijuana shipment from Seattle at a Chicago-area freight company. Dkt. 223 ¶ 8.c. This shipment

U.S. Sentencing Memorandum - 2
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contained 29 kilograms of marijuana, and the co-conspirator again drove it to Chicago Stash House 1. *Id*.

Li continued to pick up marijuana shipments, and on December 3, 2018, two marijuana shipments arrived in the Chicago-area, one from Seattle and another from California. Dkt. 223 ¶ 8.d.

 

Top of shipment from Seattle                Shipment from California

Over the course of that day, the packages were picked up and brought to Li's residence, Chicago Stash House 2. Dkt. 223 ¶ 8.d. That day, investigators prepared to serve a search warrant, and just before they did, two individuals came to Chicago Stash House 2, purchased black garbage bags filled with marijuana, and drove away. *Id*. Investigators stopped their vehicle and found 10.4 kilograms of marijuana and $15,500 in U.S. currency. *Id*.

Investigators then searched Chicago Stash House 2. They encountered Li and a co-conspirator, and they found boxes that looked like the shipments from Seattle and California.

U.S. Sentencing Memorandum - 3
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Boxes found in Chicago Stash House 2

In Li's house, investigators also found 27.4 kilograms of marijuana and $18,460 in U.S. currency. Dkt. 223 ¶ 8.d.




Some of the marijuana found at Chicago Stash House 2

U.S. Sentencing Memorandum - 4
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Despite the search of Li's house, Li continued to traffic marijuana. In May 2020—more than a year after the search—investigators saw Li in the Chicago area drive his vehicle to pick up two boxes. Dkt. 223 ¶ 8.e. After Li collected the boxes, investigators stopped him. *Id*. When they searched the vehicle, investigators found 4.5 kilograms of marijuana. *Id*.

Li still did not stop trafficking marijuana. Approximately five months later, when Li was arrested at Chicago Stash House 2 on the charges in this case, investigators found 21.7 kilograms of marijuana in his residence. Dkt. 223 ¶ 8.f.

In October 2020, Li made his initial appearance via videoconference. The government did not pursue detention, and Li has been on bond since his arrest.

### III. GUIDELINES

The government agrees with the Probation Office's calculation of the advisory Guidelines range, with the exception of its application of the minor role adjustment. The Probation Office applied the two-level, minor-participant reduction because it concluded Li "is substantially less culpable than the average participant." PSR at 15. While the government agrees Li was not a high-level member of the conspiracy, the evidence does not show that he was "*substantially* less culpable than the average participant in the criminal activity." USSG § 3B1.2 cmt. 3(A). In support of the reduction, Li proffers that a co-conspirator recruited Li into the conspiracy and that the circumstances of Li's stash house make it less serious than the other Chicago stash house. But neither claim supports the reduction. Even if Li joined the conspiracy after others had done so, Li was similarly culpable. First, like his co-conspirators, Li trafficked large amounts of marijuana, and he did so even after law enforcement intervened. Second, Li's use of his home to store and distribute drugs, rather than using a dedicated stash house for that conduct, is more serious, not less. Li lived at his residence with his wife and child but still used the home to store and distribute marijuana. The Court should not apply a two-level minor participant reduction, and Li's Guidelines range should be 57-71 months.

//

U.S. Sentencing Memorandum - 5
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV. RECOMMENDATION AND JUSTIFICATION

The government joins the Probation Office in recommending a custodial sentence of 30 months—below the low-end of the Guidelines range. This recommendation is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) requires the Court to fashion a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed training, care, or treatment. This Court is also to consider the nature and circumstances of the offense, the history and characteristics of the offender, the kinds of sentences available, the policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the defendant's crimes. However, as the Ninth Circuit and the Supreme Court have made clear, the sentencing guidelines are "the 'starting point and the initial benchmark' . . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 996 (9th Cir. 2008) (internal citations omitted).

## A. The Seriousness of the Offense and Li's Role

Li and his co-conspirators were persistent. For approximately two years, Li and his co-conspirators illegally distributed large quantities of marijuana in violation of federal and state law. *See* Dkt. 223 ¶ 8.g (admitted no conspirators had licenses for their activity). Li did so even though he knew his conduct was illegal. Investigators searched his house in December 2018, and found a large quantity of marijuana. But Li continued trafficking drugs. In May 2020, investigators stopped and searched his vehicle, and found large quantities of marijuana. Li still did not stop, and when investigators arrested him in October 2020, he again had a large quantity of marijuana in his house. Li repeatedly broke the law.

Li's conspiracy and its persistent violations of the law pose a real danger to the community. Li received marijuana from Washington State, where his co-conspirators grew marijuana without state-issued licenses. Through such licenses, Washington State imposes a number of safety requirements on marijuana businesses. For example, marijuana

U.S. Sentencing Memorandum - 6
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

production creates environmental and other hazards, so state regulations prevent producers from using dangerous pesticides, disposing of waste in ways that hurt the environmental, and polluting the air. State regulations also help to keep consumers safe by prohibiting marijuana sales to minors, checking for adulterated marijuana products, and limiting consumption to avoid other dangers, such as traffic accidents. Indeed, in the course of this investigation, law enforcement encountered many of the problems posed by unlicensed marijuana production. Investigators received complaints from neighbors about marijuana grows, searched a grow that had caught on fire, and during the search of another grow, even saw an electrical wire spontaneously sparked and melted in front of them. Growing marijuana without any oversight or licensing causes environmental hazards, endangers the public, and blights neighborhoods.

Such illegal marijuana production and distribution also disadvantages marijuana businesses that follow state law. Licenses and permits cost money, as do the renovations, security systems, employee protections, and equipment needed to comply with them. State licensees also pay substantial taxes on the sale of their product. Unlicensed marijuana producers avoid these expenses and thus have certain competitive advantages over producers that try to follow state law. This disparity threatens the viability of state marijuana regulatory regimes.

The large amount of cash involved in illegal marijuana distribution poses a further danger to the community. The presence of such cash increases the likelihood and fear of robberies, and because those involved in illegal cash-based businesses are reluctant to involve police, they often try to protect themselves, commonly with firearms. In one particularly dangerous incident in this case, when law enforcement served a search warrant at a defendant's house, the defendant (not Li) approached law enforcement with a gun. No one was injured in the incident, but other similar confrontations between drug traffickers and those intent on robbing them could end differently, with serious injury or worse. Illegal drug trafficking often attracts guns—as it has in this case—and this mix poses an additional danger to the community.

U.S. Sentencing Memorandum - 7
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Li was a committed member of a conspiracy to produce and distribute marijuana that posed a danger to the public and threatened the integrity and longevity of state efforts to regulate the marijuana industry. Li's crime warrants the recommended sentence.

B. **Li's History and Characteristics**

Li's history and characteristics also support the government's recommendation. Li is a United States Citizen who emigrated from China when he was approximately 8 years old. PSR at 2; PSR ¶ 55. He moved with his family to Washington D.C. and then to Chicago, where he worked in restaurants. PSR ¶¶ 55, 71. Li and his wife have a 4-year-old son, and they own their home in Chicago. PSR ¶¶ 57, 74. Li is in good health and has no history of serious medical or mental health issues. PSR ¶¶ 61, 63. While Li did not initially disclose a history of substance abuse to the Probation Office, his conduct on bond shows that he uses methamphetamine. *See* Release Status Report. The Probation Office's Release Status Report further reveals that Li initially lied about his drug use after testing positive for using methamphetamine, but he eventually admitted his use and has begun the process of seeking treatment. *Id*. While Li does not have any previous criminal convictions, the evidence shows he was involved in illegal drug trafficking for some time. While it is encouraging that Li is close to his wife, child, and family, his history of repeatedly breaking the law and abusing methamphetamine is concerning.

C. **Promotion of Respect for the Law, Deterrence, Just Punishment, and Protecting the Public from Future Crimes of the Defendant**

The recommended sentence is needed to promote respect for the law, deter Li and others from further crime, and protect the public. As explained above, Li and his co-conspirators have persisted in violating not only federal law, but also state law, and in doing so, they threaten the viability of state regulatory approaches to marijuana just as these new regimes take their first steps. The recommended sentence sends a clear message—including to the many unindicted participants in Li's network of marijuana traffickers—that producing and distributing marijuana in violation of federal and state law will not be condoned.

U.S. Sentencing Memorandum - 8
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. Avoiding Sentencing Disparities

The government's sentencing recommendation does not create any sentencing disparities. The recommended sentence is consistent with Li's role, the sentences already issued in this and the related cases, and the anticipated sentences for other defendants. To date, the Court has sentenced one other co-conspirator—Yi Jun Chen. Chen's illegal conduct occurred over a longer period and involved not only the shipping and distribution of marijuana, but also the illegal production of the drug. Chen had other mitigating factors not present for Li, and while Chen should receive a longer sentence than Li, it should not be substantially longer. In addition, the recommendation for Li is consistent with the anticipated recommendations for other defendants.

## V. CONCLUSION

For the reasons set forth above, the government joins the Probation Office in recommending a custodial sentence of 30 months followed by three years of supervised release.

Dated this 26th day of April, 2022.

NICHOLAS W. BROWN
United States Attorney

*/s/ Nicholas Manheim*
NICHOLAS A. MANHEIM
Assistant United States Attorney
700 Stewart Street, # 5220
Seattle, Washington 90101
Telephone: (206) 553-7970
Email: Nicholas.Manheim@usdoj.gov

U.S. Sentencing Memorandum - 9
*United States v. Guolong Li*, CR20-171 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970